UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL, #414234,

                Plaintiff,                Civil Action No. 14-11337
                                                    Honorable Avern Cohn
v.                                                   Magistrate Judge David R. Grand

DANIEL HEYNS, PAUL KLEE, LEE
McROBERTS, S. CAMPBELL, STEVEN
KINDINGER, B. EVERS, and C. CONDON,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT THE MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [19]

Before the Court is the motion for summary judgment filed on October 6, 2014, by the seven defendants in this case, all of whom are employed by the Michigan Department of Corrections ("MDOC"): Daniel Heyns, Paul Klee, Lee McRoberts, Sherman Campbell, Steven Kindinger, Brian Evers, and Louis Condon (collectively the "MDOC Defendants"). [19]. *Pro se* plaintiff Robert Annabel, II ("Annabel"), an incarcerated person, submitted a response to this motion on December 19, 2014. [23]. The MDOC Defendants did not file a reply. The matter has been referred to the undersigned for all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). [17].

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the MDOC Defendants' motion for summary judgment [19] be **GRANTED**.

## II. REPORT

### A. Background

Annabel is a State of Michigan prisoner who, at all relevant times, was confined at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.[1] [1]. Annabel brings this civil rights action pursuant to 42 U.S.C. §1983, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment.[2] [*Id.*]. Annabel also pleads claims against the MDOC Defendants under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, *et seq*. [*Id.*]. Annabel sues the MDOC Defendants in their personal and official capacities, seeking monetary damages as well as injunctive relief.

### B. Relevant Facts

In his complaint, Annabel alleges that he takes psychotropic medications to treat a diagnosed mental illness, which renders him particularly sensitive to heat. [*Id.*]. He further asserts that the MDOC Defendants failed to accommodate this sensitivity and thereby placed him in danger of heat stroke and other heat-related complications. [*Id.*]. According to Annabel, he submitted prison "kites" and filed grievances alleging that he should be provided with a state-issued portable fan on account of his condition. [*Id.* at ¶¶ 10-11]. Annabel alleges that each of these requests was denied under MDOC policy directives prohibiting the distribution of state issued portable fans to single-bunked inmates. [*Id.* at ¶¶ 16-17]. It appears that Annabel is currently challenging the applicable policy directives themselves and how the MDOC

---

[1] While Annabel is currently housed at the Ionia Maximum Correctional Facility in Ionia, Michigan, the events at issue in the complaint occurred when he was incarcerated at ARF. [1 at 3].

[2] Although Annabel sought to represent and/or proceed in a class action on behalf of five similarly situated plaintiffs, the district court entered an order summarily dismissing these additional plaintiffs on July 30, 2014. [8].

Defendants employed them in this particular matter.

### 1. *The Applicable Policy Directives*

The MDOC Policy Directive ("PD") at issue in this case is PD 04.07.110, which is entitled "Cell Furnishings." [1 at ¶¶ 12, 13]. The record shows that the MDOC revised this policy several times during 2013 (the time period in this matter). [19, Ex. 5 at ¶ 4]. In all of these versions, the distribution of state-issued portable fans is governed by paragraph F (which lists state-issued cell/room furnishings), subparagraph 9. [*Id.*]. The following outline tracks the most recent iterations of subparagraph 9:

- In the version effective February 6, 2012: "Fan approved by the CFA [Correctional Facilities Administration] Deputy Director, but only in double-bunked cells or rooms unless otherwise approved by the CFA Deputy Director." [19, Ex. 5, Attachment 19-6 at 26].

- In the version effective March 4, 2013: "Except in Level I and level II housing areas, a fan approved by the CFA Deputy Director, but only in double-bunked cells or rooms unless otherwise approved by the CFA Deputy Director." [*Id.* at 20].

- In the version effective April 22, 2013: "In Level I, Level II, and Level IV (double-bunked) housing areas prisoners may possess and purchase one fan approved by the CFA Deputy Director. The Department is not required to issue state-issued fans to Level I, Level II, or Level IV (double-bunked) indigent prisoners, unless the indigent prisoner also has a documented heat-related illness." [*Id.* at 14].

- In the version effective June 17, 2013: "One portable 6" fan as approved by the Department. This requirement applies only to Level IV double-bunked indigent prisoners who also have been diagnosed by Health Care as having a documented heat-related illness." [*Id.* at 8].

According to the MDOC Defendants, PD 04.07.110 does not impose an absolute limitation on allowable property. Instead, it sets forth a list of items that the MDOC issues to prisoners. [19 at 10]. Prisoners are permitted to purchase and possess property beyond those items specified in PD 04.07.110. This form of permitted property is covered by PD 04.07.112, entitled "Prisoner Property" (which Annabel does not mention in his complaint). [*Id.*]. Similar to

PD 04.07.110, the MDOC also revised this policy several times during 2013. But in every version of PD 04.07.112, paragraph D references Attachment B, which lists the items that Level IV prisoners, such as Annabel, are allowed to purchase and possess. [19, Ex. 5 at ¶ 5]. The most recent versions of Attachment B are provided as follows:

- <u>In the version effective October 29, 2012</u>: there is no reference to fans. [19, Ex. 5, Attachment 19-7 at 11-15].

- <u>In the version effective March 29, 2013</u>: "A prisoner housed in Level IV (double-bunked) cells/rooms may purchase and possess one personal portable fan as approved by the Department. The Department is not required to issue state-issued fans to Level IV (double-bunked) indigent prisoners, unless the Level IV (double-bunked) indigent prisoner also has a documented heat-related illness." [*Id.* at 9, ¶39].

- <u>In the version effective June 17, 2013</u>: the restriction on personal fans was removed. This version of the policy merely states that Level IV prisoners are allowed to purchase and possess: "One personal portable 6" fan as approved by the Department." [*Id.* at 3, ¶18].

Notably, the MDOC allowed Level IV prisoners to purchase portable fans after March 28, 2013. [*Id.*, Ex. 5 at ¶ 5].

### 2. *Annabel's Allegations*

Annabel's complaint centers upon his use of psychotropic medication, which, according to him, is commonly "known to impair the body's ability to regulate heat when temperatures rise above 85° F." [1 at ¶ 4]. Annabel asserts that he was not housed in an air-conditioned unit, that although his cell windows opened, they offered "little relief," and that there was no in-cell ventilation system to speak of. (*Id.* at ¶ 7). Annabel further alleges that he requested a fan for his cell, but this request was denied, in part because he was not considered indigent under the MDOC's policy directives, in part because of his security level (Level IV), and in part because he was single-bunked. (*Id.* at ¶6). Annabel maintains that he submitted prisoner "kites" to one or more of the named defendants, and that he filed at least one unsuccessful grievance

4

challenging the refusal to provide him with a state-issued portable fan (Grievance No. ARF-13-05-01612-03F). [*Id.* at ¶¶ 10-11]. In denying his requests for a fan, Annabel claims that the MDOC Defendants were deliberately indifferent to his serious medical needs under the Eighth Amendment and that they violated his rights under the ADA and the RA.

### 3. *The MDOC Defendants' Motion for Summary Judgment*

In their motion for summary judgment, the MDOC Defendants each proffer their own sworn affidavits disclaiming any deliberate indifference to Annabel's purported medical condition and denying that they violated the ADA or the RA. For his part, MDOC Director Daniel Heyns attested that he did not even know who Annabel was until he received a copy of the complaint and that he has no direct involvement in the "day-to-day" management of MDOC facilities. [19, Ex. 1 at ¶ 3, 10]. Heyns further acknowledged that MDOC policy directives govern the types of personal property that inmates may possess, but noted that his role is limited to reviewing those policy directives and approving them for department-wide implementation. [*Id.* at ¶ 6]. Similarly, Warden Paul Klee stated that he "had no direct involvement in the matter and was unaware of prisoner Annabel's medical condition." [19, Ex. 2 at ¶ 4]. Klee also noted that any kites that Annabel may have addressed to him were forwarded to the deputy warden in charge of housing. [*Id.* at ¶ 3].

While other MDOC defendants played some role in Annabel's grievance process, none of them apparently knew whether he, in fact, suffered from a documented heat-related condition. For instance, Deputy Warden Lee McRoberts drafted a May 29, 2013 memorandum denying Annabel's request for a fan on the sole basis that Annabel was assigned to a single-cell Level IV unit. [19, Ex.3 at ¶ 6]. At the same time, McRoberts indicated that he "was not aware of any document from Health Care regarding a medical need for any accommodations for heat-related

5

illness." [*Id.* at ¶ 7]. Another example is Deputy Warden Sherman Campbell, who not only denied Annabel's June 6, 2013 Step II grievance because he was assigned to a single-bunk Level IV unit, but also on the ground that "Annabel [did] not have a medical accommodation to have a fan." [19, Ex. 3 at 7]. Campbell repeated this assertion in his affidavit, noting that he was "not aware of any medical detail calling for special accommodations regarding Plaintiff's condition."[3] [19, Ex. 4 at ¶ 7].

Assistant Resident Unit Supervisor Steven Kindinger's contact with Annabel was even more limited. Kindinger recalled that Annabel had once asked him for a portable fan during the summer of 2013, that he notified Annabel of PD 04.07.110, and that he informed Annabel of his ineligibility to obtain such a fan. [19, Ex. 6 at ¶ 3]. Like his colleagues, Kindinger stated that he was "not aware of whether prisoner Annabel was diagnosed by Health Care as a having a heat-related illness that required a fan." [*Id.*]. Another assistant resident unit supervisor, Louis Condon, attested that he interviewed Annabel on May 29, 2013, regarding his Step I grievance for "not being accommodated with a state-issued fan for his cell by ARUS Kindinger." [19, Ex. 7 at ¶ 3; *see* Ex. 3 at 12]. Condon also reviewed PD 04.07.110 with Annabel and informed him

---

[3] Campbell also attested that he was "not aware that Plaintiff was on psychotropic medications that impaired his ability to regulate heat." [19, Ex. 4 at ¶ 7]. This particular assertion is somewhat odd since Annabel's May 23, 2013 Prisoner Kite, which is directed to Campbell and stamped "Received ARF Deputy Warden" on May 25, 2013, states, "I take psychotropic medication that impairs my body's ability to regulate heat…" [*Id.*, Ex. 3 at 5]. Also, Campbell responded to Annabel's Step II grievance in which Annabel indicated that he would "discontinue [his] psychotropic medication to avoid heat-related illness." [*Id.* at 7]. However, taken together with Campbell's prior statements in the Step II grievance denial, Campbell could have been referencing the absence of any *medical records* documenting that Annabel actually was using a medication that caused him to suffer a heat-related condition. [*Id.* at 8 ("Prisoner Annabel does not have a medical accommodation to have a fan."); *id.*, Ex. 4 at ¶ 7 ("Prisoner medical records are confidential, and I was not aware of any medical detail calling for special accommodations for [Annabel's] condition.")]. At any rate, viewing the evidence in the light most favorable to Annabel, it shows that Campbell was at least aware of Annabel's *assertion* that he was on psychotropic medication that he *claimed* impaired his ability to regulate heat. The Court discusses the relevance of that evidence below.

that he had not met the criteria for obtaining a portable fan because: (1) Annabel was assigned to a single-cell Level IV unit; and (2) he was not considered indigent under the relevant policy directives. [19, Ex. 7 at ¶ 3].

Furthermore, Resident Unit Manager Brian Evers related that he too had informed Annabel about the requirements set forth in PD 04.07.110 and that Annabel had not met those requirements. [19, Ex. 5 at ¶ 3]. Evers stated that Annabel never qualified for indigent status to receive a state-issued fan under PD 04.07.112 and that he was not "aware that prisoner Annabel was suffering a heat related illness" or any other condition "posing a substantial risk to his health." [*Id.* at ¶ 9; *see id.* at ¶ 6]. He also noted that Annabel's cell was equipped with running water at all times. [*Id.* at ¶ 8].

In their supporting brief, the MDOC Defendants maintain that: (1) Annabel fails to establish an Eighth Amendment claim because there is no evidence that they acted with deliberate indifference to his alleged medical condition; (2) his causes of action under the ADA and RA lack merit because the record is devoid of any indication that the MDOC Defendant's denied benefits to Annabel on account of a disability; and (3) they are entitled to qualified immunity.

### C. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists,

7

the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**D.     Analysis**

   *1.     Eighth Amendment Violation – As Applied*

Annabel asserts that the MDOC Defendants violated the Eighth Amendment when they denied his request for a portable fan pursuant to enforcement of PD 04.07.110.

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments" upon incarcerated persons. *United States v. Campbell,* 245 F. App'x 505, 508 (6th Cir. 2007). This prohibition prevents prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to their serious medical needs. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "Deliberate indifference to one's need for medical attention

8

suffices for a claim under 42 U.S.C. § 1983." *Id.* (citing *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985)). Deliberate indifference can arise as a result of delayed treatment, *Blackmore,* 390 F.3d at 899, inadequate treatment, *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011), or the failure to provide any treatment whatsoever, *Rouster v. Cnty. of Saginaw,* 749 F.3d 437, 448–449 (6th Cir. 2014), for a prisoner's serious medical need.

The Sixth Circuit recently explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need.[4] To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Corr. Medical Servs., Inc.,* 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted) (footnote added). Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that: (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (2) the official actually drew the inference. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In other words, the official must recognize the potential for harm to the inmate and must fail to act to prevent that harm.

---

[4] A sufficiently serious need must be more than "mere discomfort or inconvenience." *Talal v. White,* 403 F.3d 423, 426 (6th Cir. 2005) (quoting *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir. 1992)). Rather, it must pose "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 824 (1994); *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000).

In this case, Annabel's Eighth Amendment claim fails to satisfy both the objective and subjective prongs of the deliberate indifference standard. With respect to the objective prong, Annabel has not adequately demonstrated that he suffers from "a sufficiently serious medical need." Annabel relies principally on *Gibson v. Moskowitz*, 523 F.3d 657, 660-62 (6th Cir. 2008) for the proposition that "[i]t is well established law in the Sixth Circuit that prisoners taking psychotropic medication are unquestionably at risk of heat-related illness or death, and that the M.D.O.C., in particular, is obligated to accommodate such prisoners." [23 at 10]. But Annabel's assessment of *Gibson's* import is inaccurate. *Gibson* involved the death of Ozy Vaughn, an MDOC inmate who, on January 25, 2002, was exhibiting an extreme reaction (*e.g.*, had lost 42-pounds in a matter of days, claimed his actions were being controlled by "outside forces," and refused to eat or drink) to psychotropic medication. Vaughn's condition worsened over the course of the next few days, and he died on January 29, 2002. After losing at a jury trial on Vaughn's Eighth Amendment deliberate indifference claim, the psychiatrist who treated Vaughn on January 25th appealed, arguing that Vaughn's condition, on that particular day, did not constitute a "serious medical need." As to that point, the Sixth Circuit merely held that "drawing all reasonable inferences in favor of the estate…[a] reasonable jury could find that Vaughn's medical needs were serious on [] the 25th." *Gibson*, 523 F.3d at 662. Thus, *Gibson* far from establishes that an inmate taking any form of psychotropic medication is necessarily at substantial risk of suffering a serious heat-related medical need, let alone one requiring any particular "cooling" accommodations.

Annabel has presented no evidence whatsoever that he was ever subjected to conditions which created a substantial risk of harm. In particular, there is no medical record verifying whether Annabel ever received a diagnosis for a heat-related condition. Nor is there a single

10

treatment note documenting whether Annabel had ever been treated him for a heat-related illness. Most strikingly, during the summer of 2013, when the temperature in his cell had allegedly reached upwards of 85 degrees, it does not appear that Annabel ever sought medical treatment for a heat-related condition or that MDOC officials denied him such treatment after requesting some form of medical intervention.[5] Rather, Annabel relies on kites he sent to various persons in the spring of 2013 in which he wrote, "I take psychotropic medication that impairs my body's ability to regulate heat during the hot summer months." [*E.g.*, 23 at 26]. In his follow-up grievance, Annabel made specific reference to concerns about potential future "consecutive" summer days where the temperature exceeded 90 degrees, and indicated that if any such days were to come about, he would not take his psychotropic medication. [19, Ex. 3 at 7]. But such conditional and speculative self-serving "concerns" do not raise a material question of fact as to whether Annabel was actually subjected to conditions that posed a substantial risk to his health.

Indeed, in responding to Annabel's grievance, Defendant Campbell wrote, "Medical staff do screen all prisoners and medical accommodations are met--according to individual needs … Prisoner Annabel does not have a medical accommodation to have a fan…Prisoner Annabel

---

[5] Insofar as Annabel contends that these prison cell temperatures alone violate the Eighth Amendment, he failed to demonstrate that such conditions "fall below 'the minimal civilized measure of life's necessities." *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir. 2004) (affirming the district court's finding, after a bench trial, that cell temperatures reaching "between approximately eighty degrees at night to approximately eighty-five or eighty-six degrees during the day" did not violate the Eighth Amendment). Additionally, the MDOC Defendants proffered sufficient evidence that Annabel's cell had running water throughout the summer of 2013 [19, Ex. 5 at ¶ 8], and although they were not consistently operational, Annabel acknowledges that inmates in his unit had access to an ice machine "2 or 3 times per day during the summer." [23, Ex. 1 at ¶ 12]; *see Chandler*, 379 F.3d at 1298 (noting that plaintiffs failed to establish an Eighth Amendment conditions-of-confinement claim in part because "every cell has a sink with hot and cold running water, and every inmate possesses a drinking cup.").

presented no documentation to support allegations within the grievance…" [*Id.* at 8]. Annabel does not even dispute Campbell's assertions, much less provide the Court with documentation that he ever sought treatment, or obtained a doctor's note indicating he was at substantial risk of harm without a "cooling" accommodation. Consequently, without any evidence to substantiate his claim of a "serious medical need," Annabel has not sufficiently established the objective portion of the deliberate indifference test.

Even had Annabel proffered sufficient evidence that he suffered from a "serious medical need," his Eighth Amendment claim would still fail the subjective prong of the deliberate indifference standard. Of the MDOC Defendants who had direct contact with Annabel, all of them attested they were unaware that he actually suffered from a documented heat-related condition and required a cooling accommodation. Annabel failed in his response to provide any rebuttal evidence showing that the MDOC Defendants were either: (1) aware that he was actually diagnosed with or suffering from a medically verifiable heat-related condition; or (2) aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and they actually drew such an inference. *See Farmer v. Brennan,* 511 U.S. at 837. As noted above, *supra* fn. 3, at best, Annabel can show that he *claimed* that he was on psychotropic medication that impaired his ability to regulate heat. Thus, the grievance responder did not simply reject Annabel's claim, or deny it based on his housing in a single-bunk unit [*cf.* 23 at 23, ¶14], but determined that he did "not have a medical accommodation to have a fan." [19, Ex. 3 at 8]. Accordingly, Annabel has failed to raise a material question of fact as to the subjective component to the deliberate indifference standard.

For all of the foregoing reasons, the MDOC Defendants' motion for summary judgment should be granted as to Annabel's as applied Eighth Amendment claim.

2.  *Eighth Amendment Violation – Facial Challenge*

Inasmuch as Annabel mounts an Eighth Amendment facial challenge to the most recent version of PD 04.07.110, his claim does not fare any better. "In order to demonstrate that a law or policy is facially invalid, a 'challenger must establish that no set of circumstances exists under which the [policy] would be valid.'" *DeWeese v. Mich. Dep't of Corr.*, No. 14-386, 2014 U.S. Dist. LEXIS 116853, at *10-11 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In this case, PD 04.07.110 permits indigent inmates to obtain state-issued fans if they are double-bunked in a Level IV unit and have a "documented heat-related illness." [19, Ex. 5, Attachment 19-6 at 8, 14]. There is no policy directive in place, however, that prevents prisoners housed in single-bunk Level IV units (such as the one where Annabel was housed) from purchasing a portable fan from his own funds, *see* PD 04.07.112 ¶ D, Attachment B, or, if indigent, from demonstrating a documented heat-related illness.[6] Consequently, PD 04.07.110 is not facially unconstitutional because it does not "authorize[ ] prison officials to withhold state-issued items, or to ignore their duty to protect a prisoner's health and safety." *DeWeese*, 2014 U.S. Dist.

---

[6] Annabel's allegation that "Defendant Heyns' enforcement of the double-bunked criterion is a thinly disguised attempt to preserve the MDOC budget by refusing to provide Plaintiffs [] with state-issued fans…" is unavailing. Such a vague allegation of cost containment is insufficient to create a genuine issue of material fact as to the policy in question's constitutional validity. *See Lowe v. Vadlamudi*, 2009 WL 736798, at *5 (E.D. Mich., Mar. 16, 2009) ("Cost control measures initiated by state and local governments by themselves are not unconstitutional. In fact, they are desirable. [The MDOC defendant's] knowledge of a policy that encourages cost containment does not translate into deliberate indifference to the plaintiff's medical needs in this case, since there is no suggestion in the pleadings that [the official] was aware of those needs and specifically disregarded them."); *Brightwell v. Lehman*, 2006 WL 931702, at *8 (W.D. Pa., Apr. 10, 2006) ("Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference…").

LEXIS 116853, at *11.[7]

### 3. Eighth Amendment Violation – Supervisory Liability

The Court also rejects Annabel's Eighth Amendment claim against MDOC Director Heyns and Warden Klee to the extent it is premised upon a theory of supervisory liability. Under section 1983, supervisory liability requires a showing that "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Larson*, 505 F. App'x 475, 478 (6th Cir. 2012) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). "At a minimum," a plaintiff must demonstrate "that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Smith v. Erie County Sheriff's Dep't*, 603 F. App'x 414, 423 (6th Cir. 2015) (quoting *Bellamy*, 729 F.2d at 421). Since "a prerequisite to [this claim] is that a constitutional violation has occurred," *Watson v. City of Marysville*, 518 F. App'x 390, 393 (6th Cir. 2013), and the Court has already determined that no constitutional violation took place, Annabel's derivative claim on the ground of supervisory liability must likewise be dismissed. *Id.* at 393-394.[8]

### 4. ADA and RA Claims

Finally, Annabel maintains that the MDOC Defendants subjected him to discrimination under the ADA and RA based upon his use of psychotropic medication and any associated heat-related illness.

---

[7] Regardless of whether Annabel qualified for indigent status [23, Ex. 1 at ¶ 5], he still would have remained ineligible for a state-issued portable fan under both PD 04.07.110 and 04.07.112 because there is no evidence that he ever suffered from a "documented heat-related illness."

[8] In light of the above Eighth Amendment findings, the Court need not consider the MDOC Defendants' alternative argument that they are entitled to qualified immunity as Annabel already "failed to establish a prima facie case of a violation of a constitutional right . . ." *Jefferson v. Lewis*, 594 F.3d 454, 460 (6th Cir. 2010).

Title II of the ADA provides that no qualified individual with a disability shall, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" on account of his disability. *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). A Title II ADA plaintiff must establish that: (1) he is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendants because of his disability. *See Tucker v. Tennessee*, 539 F. 3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

A "qualified individual with a disability" is "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); *see also Tucker*, 539 F.3d at 532-33 (6th Cir. 2008). A "disability" is defined as: "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

To the extent the RA applies here, it additionally provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . ." 29 U.S.C. § 794(a).

Assuming he is a "qualified individual with a disability" for the purposes of both statutes, Annabel's ADA and RA claims fail because he has not demonstrated that the MDOC Defendants

15

denied him the opportunity to participate in or benefit from services, programs, or activities offered at ARF, or that the MDOC defendants otherwise discriminated against him on account of his disability. In this regard, Annabel's claims suffer from two critical flaws. First, he neglected to identify which services, programs, or activities the MDOC Defendants purportedly excluded him from. And second, even if the MDOC defendants discriminated against him in some other manner, such as by denying him access to a portable fan, Annabel did not marshal any proof that the MDOC Defendants permitted other similarly situated inmates without a disability from obtaining the same fans.

Ultimately, Annabel failed to show, both under the ADA and the RA, that the MDOC Defendants prohibited him from obtaining a portable fan on account of his alleged disability.[9]

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the MDOC Defendants' motion for summary judgment **[19]** be **GRANTED**.

Dated: July 31, 2015　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and

---

[9] Though he did not raise the matter in his complaint, in his response brief, Annabel alleges that "for purposes of the ADA, there is also [an] underlying Fourteenth Amendment equal protection of the law . . . violation[]." [23 at 13]. However, since Annabel provided no evidence that the MDOC Defendants allowed other similarly situated inmates without a disability to obtain portable fans, his equal protection claim should be dismissed as well. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.").

recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2015.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
